UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTOPHER G. FRENCH, CDCR #K-96643,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>SERGEANT J. MITCHELL,<br><br>　　　　　　　　　Defendant. | Case No.:  22-cv-1355-MMA (AHG)<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>[Doc. No. 3]<br><br>**DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) & FED. R. CIV. P. 4(c)(3)** |

Plaintiff Kristopher G. French, a state prisoner incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding *pro se*, has filed a Complaint pursuant to 42 U.S.C. § 1983.  Doc. No. 1.  Plaintiff has not paid the civil filing fee but has instead filed a Motion to Proceed in Forma Pauperis ("IFP") with a separately filed inmate trust account statement.  Doc. Nos. 3, 5.

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if they are granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007) ("28 U.S.C. § 1915(a) allows the district court to waive the fee, for most individuals unable to afford it, by granting IFP status.").

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1) & (4).  The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2).  Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether the action is ultimately dismissed.  *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

Plaintiff's inmate trust account statement shows average monthly deposits of $0.04 and an average monthly balance of $0.22 over the 6-months prior to initiating this suit, and an available balance of $0.67 at the time of filing.  Doc. No. 5 at 1.  The Court therefore **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because the prison certificate indicates Plaintiff may have no means to pay it.  *See* 28 U.S.C. § 1915(b)(4) (providing

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14) (eff. Dec. 1, 2020).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Plaintiff remains obligated to pay the entire fee in monthly installments.

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, the Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.    Allegations in the Complaint**

> The Plaintiff is a 39-year old Transgender who just recently came out 2 years ago and started doing hormonal therapy. On August 21, 20[20] - C14 where I am housed was being searched randomly. I was housed in C14-206 with my cellmate "Blake" who is also Transgender. Our cell was approached by Sgt. J. Mitchell the Defendant. He came to the door and immediately asked "What's on your back wall." I informed him that they were Odinist GODs printed out by the spych [sic] techs. Sgt. Mitchell then said "Oh Vall White Power." We both said "no" we-r-just Transgender with Odinist beliefs (Odinist are Norse Religions). He quickly became upset, and said "strip out, drop it and cough." I went first. I took off all my clothes turned around, opened by butt cheeks and coughed. Sgt Mitchell said do it again this time open your ass real wide. I asked if this was necessary and he said it's a verbal order, 115 if you refuse. I did as the Sgt asked and bent over opened by butt cheeks and coughed. He then said no bust that thing open. I felt violated sexually and scared/vulnerable. I bent over and held my butt cheeks open for what seemed to be a minute, I thought that was over. Sgt Mitchell then said turn and look at me and run your fingers thru your mouth in case you are hiding any contraband. I told Sgt. Mitchell that my fingers have fecal matter on them and I could smell it and I don't want to run my fingers thru my mouth. The Defendant became aggressive and told me that if I did not obey his order he was gonna write me several RVRs and move me to another cell. I did as the Sgt said. I started to cry because I can taste the fecal matter. I ran my fingers thru my mouth and he saw the look on my face and bust out in uncontrollable laughter, he even put his hands on his knees from laffing [sic] so hard. I found the strength to tell Sgt. J. Mitchell that what he did to me was wrong and violated me sexually and threatened me with RVRs if I did not comply with his evil orders. Sgt J. Mitchell then stated "Black Lives Matter."

Doc. No. 1 at 3–4.

Attached to the Complaint as an exhibit is a declaration from Plaintiff's cellmate, Inmate Blake, who states that Defendant Sergeant Mitchell forced her through that same sequence of events immediately after Plaintiff, that Defendant Mitchell made the strip searches into "a racial issue" where no racial issue existed, and as a result of being forced to run her fingers through her mouth which had fecal matter on them from the anal cavity search, she "developed e-coli, a bacteria that's caused from feces and I was given antibiotics." Doc. No. 1-3 at 2–3.

## C. Discussion

"[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Searches of prisoners which begin as legitimate and acceptable, albeit invasive, procedures, can become a constitutional violation where the prison official's "conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Id*. at 1145. In addition, a body search inside a prison can become so unreasonable as to violate the federal constitution where it is "excessive, vindictive, harassing, or unrelated to any legitimate penological purpose." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (holding that in determining the reasonableness of a prison strip search, "[c]ourts must consider the *scope* of the particular intrusion, the *manner* in which it is conducted, the *justification* for initiating it, and the *place* in which it is conducted")).

Plaintiff alleges the strip search conducted by Defendant Sergeant Mitchell was racially motivated, unnecessarily and gratuitously sexually demeaning and humiliating, and subjected Plaintiff to the same unhygienic conditions which caused Plaintiff's cellmate to develop a bacterial infection. Plaintiff's allegations against Defendant

Sergeant Mitchell are sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) because they plausibly allege a violation of Plaintiff's right to be free from procedures conducted "for the purpose of humiliating, degrading, or demeaning the prisoner," and strip searches which are "excessive, vindictive, harassing, or unrelated to any legitimate penological purpose." *Bearchild*, 947 F.3d at 1144–45; *Michenfelder*, 860 F.2d at 332; *Wolfish*, 441 U.S. at 559; *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff is entitled to have the U.S. Marshal effect service of the summons and Complaint against Defendant Sergeant Mitchell. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915."). Nevertheless, the Court cautions Plaintiff that the *sua sponte* screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

### III. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP.

The Court **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

The Court **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

The Court further **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (Doc. No. 1) for Defendant Mitchell and forward it to Plaintiff along with a blank U.S. Marshal Form 285. The Clerk will provide Plaintiff with certified copies of the Complaint and summons for use in serving Defendant. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, *include an address where Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1(c), and return the forms to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

The Court **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendant Mitchell as directed by Plaintiff on the USM Form 285. Costs of service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

The Court **ORDERS** Defendant, once served, to respond to Plaintiff's Complaint and any subsequent pleading Plaintiff files in this matter in which Defendant is named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening Defendants are required to respond).

The Court **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant, or if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document sought to be filed with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on Defendant or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a

Certificate of Service upon a Defendant, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: October 3, 2022

HON. MICHAEL M. ANELLO
United States District Judge